UNITED STATES DISTICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CLAUDIA VARELA and, <br> JAVIER RAMIREZ, <br>     Plaintiffs, <br> v. <br> BRENT TURNER, et al. <br>     Defendants. | Cause No. 1:20-CV-0096-HAB |

**OPINION AND ORDER**

Defendants, all Indiana State Police (ISP) officers,[1] were part of a SWAT task force helping the FBI execute an arrest warrant for Ivan E. Acosta ("Acosta"), who was under criminal indictment in this Court for three counts of distributing methamphetamine. *See United States v. Acosta,* 1:19-CR-0039. Believing him to reside at the Plaintiffs' address based on information received from the FBI, Defendants knocked, announced, and entered the residence. Acosta was not located inside. Instead, Plaintiff Claudia Varela ("Varela") and her young children were located inside the home – a home they had recently rented.

Varela and her husband, Javier Ramirez[2], filed suit alleging that the Defendants violated their Fourth Amendment rights when they served the warrant. Defendants have moved for summary judgment (ECF No. 67) asserting no constitutional violation took place and even if it did, qualified immunity shields them from liability. The motion is fully briefed and ripe for

---

[1] The parties agree that Brent Turner did not participate in the serving of the arrest warrant and thus summary judgment is GRANTED as to any claims against him.

[2] Defendants assert that because Ramirez was not at home at the time of the events, he has no damages under §1983 and the Court should grant summary judgment in favor of the defendants. The Court declines to make such a determination on summary judgment as the Defendant's argument is under-developed and raised for the first time in Defendant's reply brief. *See* ECF No. 84 at 5.

consideration. (ECF Nos. 68, 69, 82, 83, 84). Because the Court finds that Plaintiffs have raised a genuine issue of material fact as to a Fourth Amendment violation and the Defendants are not entitled to qualified immunity. Summary judgment will be DENIED.

## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

B. **Factual Background**

The facts are straightforward and, for the most part, undisputed. A federal investigation into Acosta and others led to a June 20, 2019, federal indictment and arrest warrant for Acosta. (Stmt. of Material Facts, ECF No. 69, ¶ 1). Six days later, ISP North SWAT Team executed the arrest warrant at 2835 S. Clinton Street, Fort Wayne, Indiana. (*Id.* ¶ 3; ECF No. 67-2, report showing date of detail June 26, 2019). Prior to being asked to execute the arrest warrant, ISP was not involved with the federal investigation and their role was solely to carry out the arrest warrant at the location designated by the FBI. (*Id.* ¶ 4). As part of that request, ISP received an arrest packet regarding Acosta. Aside from the mention of the arrest packet, Defendants have not provided the packet ISP received to the Court. Plaintiffs have submitted documents received in discovery that may or may not be part of an "arrest packet" referred to by Defendants in their filings. (ECF No. 83-5). Those documents confirm that Acosta was alleged to reside (at some point) at 2835 S. Clinton Street. In addition, the documents show that a "Law Enforcement Operations Order" prepared on June 7, 2019, set the June 26, 2019, date for ISP to execute the warrant at 2835 S. Clinton. (ECF No. 83-5, p. 13).[3]

Meanwhile, before the return of the federal indictment and the corresponding issuance of the arrest warrant for Acosta, Plaintiffs rented 2835 S. Clinton Street. (Varela Aff., ECF No. 83-1, ¶ 4, indicating they rented the home "about a month" before ISP served the warrant). Plaintiffs lived there with their two children. (*Id.*). They did not know Acosta and he did not live with them. (*Id.*).

---

[3] A "caution statement" at the bottom of the Operations Order stated that Acosta was "armed and dangerous," presumably to justify the use of force to be used in carrying out the warrant.

As referenced above, ISP served the warrant on June 26, 2019, relying on information in the arrest packet that Acosta lived there. There is no sign that ISP verified that Acosta lived there or that they had any belief he was inside the residence at the date and time they served the arrest warrant. After knocking and announcing, officers broke through the front door, hitting Varela in the arm as she was approaching the door in response to ISP's knocking. Varela and her children were located inside the home. Varela was removed from the home and her hands were placed in zip-ties. Officers showed her a photograph of Acosta and Varela told the officer that she had never seen that individual before. Acosta was not located inside the home and, it appears, he remains on the lam in his criminal case.

### C. Analysis

Plaintiffs seek damages via 42 U.S.C. § 1983, alleging that the Defendants violated their constitutional rights under the Fourth Amendment when they entered their residence in search of Acosta. "Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) 'was committed by a person acting under color of state law' and (2) 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 331–32 (1986)).

The Fourth Amendment provides protection against "unreasonable searches and seizures," and "the arrest of a person is quintessentially a seizure." *Payton v. New York,* 445 U.S. 573 (1980) (internal quotation marks omitted). The Supreme Court has explained that because "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed[,] ... [i]t is a basic principle of Fourth Amendment law that searches and seizures inside a

4

home without a warrant are presumptively unreasonable." *Id.* at 585–86 (citations and internal quotation marks omitted). Thus, unless one of the "few well-defined and carefully circumscribed circumstances" justifying a warrantless entry exists, the Fourth Amendment reasonableness standard "generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Thacker v. City of Columbus,* 328 F.3d 244, 252 (6th Cir.2003) (citing *Payton,* 445 U.S. at 585–86).

A valid arrest warrant like the one issued here[4] carries with it the authority to enter the home of the person named in the warrant to execute it, so long as the police have a reasonable belief that the person resides there and is present. *See Payton,* 445 U.S. at 603. And in conducting an otherwise appropriate entry into a home, the police can conduct a limited "sweep" of the premises "to assure themselves that the house in which [the] suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack...." *United States v. Contreras*, 820 F.3d 255, 268 (7th Cir. 2016).

Relevant here, *Payton* has developed into a two-part test; law enforcement must have a reasonable belief that: (1) the arrestee resides at the dwelling; and (2) the arrestee is present at the time of the entry. *United States v. Vasquez-Algarin*, 821 F.3d 467, 472 (3d Cir. 2016). These are two requirements; both must be met to justify the entry into a home. Defendants assert both parts of the test are met here; this Court is not at all convinced.

The facts read favorably to the Plaintiffs show that, at most, Defendants had a belief from information provided to them from the FBI that Acosta resided at 2835 S. Clinton. But the Court cannot discern from the record when that information was transmitted to Defendants, whether it

---

[4] Plaintiffs argue that the arrest warrant was not a valid warrant because the Defendants needed a search warrant instead. The arrest warrant itself, however, is a valid arrest warrant for Acosta based on the federal criminal indictment returned by the Grand Jury against him. Whether that warrant was sufficient for the Defendants to enter the Clinton Street address is the question posed here.

had been confirmed by the FBI before its transmission to the Defendants or whether it was stale information. Documentation submitted by Plaintiffs suggest the plan to execute the anticipated warrant was in place for 19 days before its actual execution. Plaintiffs indicate that they were the sole residents of 2835 S. Clinton at that time. This lends itself to questions about the reasonableness of the Defendants' belief that they were serving the warrant *where Acosta lived*. Indeed, it is clear from the undisputed record that when Plaintiffs moved in – roughly a month before the warrant was served – Acosta didn't live there.

Even more concerning to the Court is the absence of any evidence in the record showing that *any* law enforcement officer reasonably believed Acosta was inside the home when they made entry. Instead, the facts read in Plaintiffs' favor suggest that the Defendants simply executed a warrant based solely on the FBI's say-so that Acosta resided there at some prior time – a fact that inevitably bit them in the backside when they didn't find him there.[5] *Payton* draws a firm line that entrance to a house to effectuate a warrant requires more than what occurred here. Thus, the Court concludes that Plaintiffs have raised a question of fact as to a Fourth Amendment violation.

That said, the Court must briefly address Plaintiffs' focus on the Supreme Court's decision in *Steagald v. United States*, 451 U.S. 204, 212 (1981) to establish a Fourth Amendment violation. *Steagald* was the second of two major decisions (*Payton* being the first) issued by the Supreme Court regarding the constitutionality of in-home arrests. As noted above, *Payton* holds that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives when there is reason to believe the suspect is within.*" *Payton*, 445 U.S. at 603 (emphasis added). *Steagald,* in turn, applied a different test where officers believe an individual for whom they have an arrest warrant is a guest in a third-party home. *Steagald* holds

---

[5] While evidence that Acosta's belongings were in the home when the Defendants entered would raise at least some inference that Acosta had lived there, these facts don't appear to exist.

only that officers may not enter a third party's residence to execute an arrest warrant without first obtaining a search warrant "based on their belief that [the suspect] might be a guest there," unless the search is consensual or justified by exigent circumstances. *Steagald,* 451 U.S. at 213, 216.

As the Court understands the facts, at no point did the Defendants believe, based solely on the information they obtained from the FBI, anything besides that Acosta resided at the Clinton Street address. It is cringeworthy, but suggested from the record, that the Defendants had no idea that Plaintiffs rented the home or were inside when they served the warrant. Had they had this knowledge, *Steagald* might apply to require a search warrant before entry into the residence. But as it stands, there is no evidence from the Defendants that they knew the Plaintiffs resided there and believed Acosta was a house guest. Accordingly, the Court finds *Steagald* inapposite and that *Payton* provides a more appropriate standard for analyzing the Defendants' conduct.

Having found an issue of fact exists as to a Fourth Amendment violation, Defendants assert that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Gray*, —- F.4th —-, No. 22-1501, 2023 WL 4836627, at *3 (7th Cir. July 28, 2023) (quoting *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017)) (cleaned up). Courts assess claims of qualified immunity under a two-part test. *Kemp*, 877 F.3d at 350. The plaintiff bears the burden of showing that (1) a statutory or constitutional right was violated, and (2) that right was clearly established at the time of the relevant conduct. *Id.* While qualified immunity is a question of law for the court, *see Smith v. Finkley*, 10 F.4th 725, 734 (7th Cir. 2021), the facts at this stage must be viewed in the light most favorable to Plaintiffs, *see Leiser v. Kloth*, 933 F.3d 696, 700 (7th

7

Cir. 2019) (considering whether "the defendants were entitled to qualified immunity when viewing the facts in the light most favorable to [the plaintiff]").

On the basis of the summary judgment record, the Court finds that both factors weigh against qualified immunity for the officers in this case. This Court has already explained that Plaintiffs' evidence at summary judgment satisfies the first prong of this test. The Court now focuses on whether the Defendants violated a clearly established right to enter the Plaintiffs' home. The answer is a straightforward yes.

"Th[e] inquiry [into whether a constitutional right is clearly established] must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12, (2015) (per curiam) (cleaned up). The Supreme Court has cautioned us, especially in the Fourth Amendment context, from reciting a general rule and using it to deny qualified immunity. *City of Escondido v. Emmons*, ––– U.S. –––, 139 S. Ct. 500, 503–04 (2019). Rather, the qualified immunity analysis requires a "high degree of specificity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citations omitted). "Clearly established law" usually means there is a case "where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* at 581. In other words, "a right is clearly established when it is defined clearly enough to put officers on notice of their duties under the circumstances they confront.... This does not require a prior case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Est. of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017) (cleaned up). The question here, then, is whether it was "beyond debate" that officers serving an arrest warrant can enter a home of the subject of the warrant without first having a reasonable belief that he was inside.

On this point, Plaintiffs hang their hat on *Steagald* not *Payton.* But as this Court has explained, Plaintiffs cannot rely on *Steagald*. Further, even if Plaintiffs had relied on *Payton,* it supplies only a general rule which the Supreme Court has cautioned lower courts not to apply broadly in Fourth Amendment cases involving qualified immunity. But it did not take this Court long to find cases showing the existence of a clearly established right under the particular facts here. The Seventh Circuit has concluded that "[o]fficers who enter premises without reasonable belief that they will find the person for whom they have a warrant will still be liable when their quarry turns out not to be present, and that should be sufficient to discourage officers from entering homes when they have no basis to believe they'll find the suspect there." *Cook v, O'Neill*, 803 F.3d 296, 301 (7th Cir. 2015); see also, *United States. v. Shaw*, 707 F.3d 666, 668 (6th Cir. 2013) (finding officers' explanations for entering a house unreasonable since officers must "take steps to reasonably ensure" they are not entering the wrong home when they execute an arrest warrant.). If these cases are not enough, there are cases like *United States v. Jackson*, 576 F.3d 465 (7th Cir. 2009), holding that officers do need *some* basis for believing that the suspect is actually present in the home, and *Harris v. Smith*, 390 Fed. App'x 577 (7th Cir. 2010), where the Seventh Circuit noted that knowing that subject of an arrest warrant lived in a home is a separate inquiry from whether officers had reason to believe he was present in the home. These cases focus on all the corroborating information that the officers had to believe that the suspect lived in the particular house *and* that he was present inside when they executed the warrant.

Finally, the Court emphasizes that nothing in this opinion should be read to suggest that law enforcement is not entitled to rely on information obtained from other agencies. What *is* required is that the reliance on that information must be reasonable in light of the circumstances they are presented. The Court is not so sure the reasonableness standard is met in this case given

the specific facts here. But that is why there are juries. For now, the Court concludes that the Defendants are not entitled to qualified immunity and summary judgment must be DENIED.

## CONCLUSION

For the reasons above, the Defendants' Motion for Summary Judgment (ECF No. 67) is GRANTED as to Defendant Brent Turner and DENIED in all other respects. A status and scheduling conference will be set by separate entry.

SO ORDERED on August 22, 2023.

        s/ *Holly A. Brady*
        CHIEF JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT